**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Francisco JIMENEZ, Defendant–
Appellant.**

No. 91–3232.

United States Court of Appeals,
Seventh Circuit.

Argued March 30, 1993.

Decided April 29, 1993.

Christopher Cook (argued), Barry R. Elden, Asst. U.S. Atty., and Gregory T. Mitchell, Office of the United States Attorney, Chicago, IL, for plaintiff-appellee.

Ronald D. Haze (argued), Chicago, IL, for defendant-appellant.

Before CUMMINGS and RIPPLE, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

RIPPLE, Circuit Judge.

In this appeal, Mr. Jimenez claims that his Sixth Amendment right to effective assistance of counsel was violated by his attorney's failure to object at his sentencing hearing to the government's alleged failure to comply in good faith with the plea agreement. For the reasons that follow, we now affirm.

## I

## BACKGROUND

On April 3, 1991, Francisco Jimenez and two co-defendants were indicted for posses-

sion of cocaine and conspiracy to possess with the intent to distribute cocaine. The charges were based on two separate transactions involving twenty-five and thirty-four kilograms of cocaine respectively. Mr. Jimenez was the first of the defendants to agree to plead guilty. He also agreed to testify against his co-defendants if necessary and provided the government with detailed information regarding a fourth co-conspirator who was planning to, and eventually did, flee the country.

On May 21, 1991, Mr. Jimenez entered into a formal written plea agreement with the government. He pled guilty to Count I of the indictment, which charged him with conspiracy to distribute cocaine. The other three counts of the indictment were dismissed; however, pursuant to his plea agreement, Mr. Jimenez agreed that the relevant conduct surrounding all four counts could be considered to calculate his offense level for sentencing purposes. In exchange for Mr. Jimenez's plea, the government promised to submit a motion under § 5K1.1 of the Sentencing Guidelines[1] requesting a downward departure from the otherwise applicable sentencing range based upon his substantial cooperation. Specifically, the government agreed to request a twenty-five percent downward departure. The written agreement explicitly noted that the final decision on sentencing remained with the sentencing court. Prior to accepting the plea, the district court held a hearing to ensure that the plea was entered voluntarily. The court questioned Mr. Jimenez about his understanding of the plea agreement and explicitly advised him that the government's obligation

---

\* The Honorable William H. Timbers, Senior Circuit Judge for the United States Court of Appeals for the Second Circuit, is sitting by designation.

**1.** Section 5K1.1 (Policy Statement) states:
Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
  (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
    (1) the court's evaluation of the significance and usefulness of the defendant's assistance,

taking into consideration the government's evaluation of the assistance rendered;
    (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
    (3) the nature and extent of the defendant's assistance;
    (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
    (5) the timeliness of the defendant's assistance.
U.S.S.G. § 5K1.1.

to request a downward departure from the Guidelines was merely a recommendation and did not bind the court. The district court also instructed the government that its motion for departure "must be in writing ... [and] submitted at least a week in advance of sentencing, with an in camera proffer as to the extent and nature of Mr. Jimenez's cooperation." Tr. of May 21, 1991 at 14. Sentencing was set for July 17, 1991. A presentence report was prepared and submitted to the court by the Probation Office, as required by Federal Rule of Criminal Procedure 32(c).

The Presentence Report mentioned the government's agreement to recommend a twenty-five percent downward departure and detailed Mr. Jimenez's cooperation. Additionally, the government submitted its sentencing memorandum on June 5. In the memorandum, the government again stated its intent to recommend a twenty-five percent downward departure pursuant to § 5K1.1 and detailed the factual basis for its recommendation. On June 26, at Mr. Jimenez's request, the district court rescheduled the sentencing hearing for August 29. On August 27, Mr. Jimenez's attorney filed a motion to withdraw as counsel. The court granted the motion and approved Martin Abrams as Mr. Jimenez's substitute counsel. Additionally, the court continued the sentencing hearing until September 3 for the benefit of the newly retained counsel.

On September 3, the sentencing hearing was held. At this hearing, Mr. Jimenez's new attorney submitted that new information, unknown to Mr. Jimenez's prior attorney or to the government, had been discovered and that the information may have affected the voluntariness of Mr. Jimenez's earlier guilty plea. Specifically, Mr. Jimenez argued, for the first time, that he had been threatened and that retaliatory action had been initiated against him after he was indicted. As a result of this "new information," the district court continued the sentencing hearing until September 9 to allow the government to investigate Mr. Jimenez's new allegations of possible coercion. The court also reminded the government that the court had not received the government's written motion to recommend a downward departure. Tr. of Sept. 3, 1991 at 5.

On September 9, Mr. Jimenez was sentenced. The government did not specifically mention the § 5K1.1 motion in its oral presentation to the sentencing court. However, the government did close its argument by stating:

> [T]he United States believes and we have considered the extensive cooperation [Mr. Jimenez] has provided, as well as his lack of criminal history, and it was for those reasons that we agreed to recommend when this plea agreement was provided to this Court a sentence of 113 months, and we stand by that recommendation today.

Tr. of Sept. 9, 1991 at 7. The district court first noted that "there has been some cooperation, [although] what the extent of it is is unclear ... and whether or not it constitutes substantial cooperation is questionable." Id. at 8. Accordingly, the court imposed a sentence of 151 months' imprisonment, the minimum sentence under the Guidelines. The court made no departure. The court went on to comment on the record that "[t]he government's, I guess, apparent oral motion for 5(k)1.1 departure is denied. It hasn't been properly substantiated." Id. at 9. At that time, the government informed the court that a written § 5K1.1 motion had been filed and handed a copy to the bench. The sentencing court then stated on the record that "the motion is filed and denied." Id. The written order later entered by the sentencing court stated that the motion was denied "without prejudice ... [and could be] resubmit[ed] [by the government] as a motion pursuant to Fed.R.Crim.P. 35." R. 80. At sentencing, Mr. Jimenez's counsel made no objection that the government's conduct had breached the plea agreement.

## II

## ANALYSIS

### A.

Mr. Jimenez believes that the government breached its obligations under the plea agreement by failing to file a written § 5K1.1 motion until the morning of the sentencing hearing and by using "equivocal" language in

its sentencing recommendation. In Mr. Jimenez's view, these actions constituted a breach of the government's promise to file a *timely and good faith* § 5K1.1 motion for a downward departure from the Guidelines. However, no objection was made at the sentencing hearing.[2] Therefore, Mr. Jimenez submits on appeal that he received constitutionally deficient assistance of counsel at his sentencing hearing because his attorney sought neither specific performance of the government's plea agreement nor vacatur of the guilty plea.

■ In essence, Mr. Jimenez argues that his conviction should be reversed because he was the victim of constitutionally deficient assistance of counsel at his sentencing hearing. The analysis by which we must assess the merits of this claim is well-settled. "Defendants' counsel are presumed effective." *United States v. Booker*, 981 F.2d 289, 292 (7th Cir.1992). Thus, "a defendant bears a heavy burden when attempting to establish that his counsel was ineffective." *United States v. Donaldson*, 978 F.2d 381, 394 (7th Cir.1992). To prevail on an ineffective assistance of counsel challenge, Mr. Jimenez must show that his representation fell below an objective standard of reasonableness, *and* that, because of that ineffective representation, the result of the trial is unreliable or that the proceedings can be characterized as fundamentally unfair. *See Lockhart v. Fretwell*, —— U.S. ——, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). " 'The benchmark for judging a claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir.1990) (quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984)).

### B.

■ Plea agreements are contracts and "the government must fulfill any promise that it expressly or impliedly makes in exchange for a defendant's guilty plea." *United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir.1992) (citing *Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971)), *cert. denied*, —— U.S. ——, 113 S.Ct. 1616, 123 L.Ed.2d 176 (1993). "[T]o insure the integrity of the plea bargaining process, the 'most meticulous standards of both promise and performance must be met by [the government].' " *United States v. Bowler*, 585 F.2d 851, 854 (7th Cir.1978) (quoting *Correale v. United States*, 479 F.2d 944, 947 (1st Cir.1973)). Nonetheless, "a party's rights under a plea agreement are limited by 'what the parties in fact agreed to.' " *United States v. Verrusio*, 803 F.2d 885, 889 n. 3 (7th Cir.1986) (citing *United States v. Benchimol*, 471 U.S. 453, 105 S.Ct. 2103, 85 L.Ed.2d 462 (1985) (per curiam)).

■ Mr. Jimenez's submission that the government breached its plea agreement is two-fold. First, he argues that the government did not comply with the plea agreement in good faith because the written § 5K1.1 motion "for the first time expressed reservations about the usefulness of [his] cooperation." Appellant's Br. at 11. Specifically, while the government did request a twenty-five percent downward departure as promised, the motion added that "a larger departure is unwarranted because the case against Mr. Jimenez's co-defendants was strong even before his agreement to cooperate, and because Mr. Jimenez's tip regarding the flight of his co-conspirator did not result in the co-conspirator's capture." R. 79 at 2–3. Secondly, Mr. Jimenez argues that the motion was untimely because it was not submitted to the court a week before sentencing.

Mr. Jimenez relies primarily upon three federal appellate cases in which the courts have held that the government, while technically fulfilling its promises, breached its plea agreement obligations by making comments at the sentencing hearings that significantly undercut the defendants' bargains. *See United States v. Canada*, 960 F.2d 263, 269

---

2. "[B]reach of a plea agreement cannot be raised for the first time on direct appeal." *United States v. D'Iguillont*, 979 F.2d 612, 614 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1873, 123 L.Ed.2d 492 (1993); *United States v. Pryor*, 957 F.2d 478, 482 (7th Cir.1992). Accordingly, defense counsel's decision not to object during the sentencing hearing effectively waived appellate review of any alleged breach of Mr. Jimenez's plea agreement.

(1st Cir.1992) (government breached obligation to make a specific sentence recommendation when prosecutor followed recommendation by urging the court to "impose a lengthy period of incarceration" and to "send a strong message"); *United States v. Grandinetti*, 564 F.2d 723, 725 (5th Cir.1977) (government breached obligation to make a specific sentence recommendation when prosecutor followed recommendation by remarking that he believed the government was "locked-in to" the agreement but that he was "not sure of the legality" or "the propriety" of the agreement); *United States v. Brown*, 500 F.2d 375, 377 (4th Cir.1974) (government breached obligation to make a specific sentence recommendation when prosecutor followed recommendation by remarking that he had "some problems" with the agreement). Mr. Jimenez argues that the prosecutor significantly undercut his bargain by mentioning the extent of his cooperation only briefly and by questioning the credibility of his sentencing hearing testimony that he had been threatened. Additionally, he argues that, because the government had explicitly been instructed that its motion must be filed in writing at least a week before sentencing, filing the motion after that time further undercut the government's recommendation.

In reply, the government submits that Mr. Jimenez's case is distinguishable from the authority he relies upon and is controlled by *Benchimol*, 471 U.S. 453, 105 S.Ct. 2103. In *Benchimol*, the Supreme Court reversed an appellate court decision that the government had breached its plea agreement to recommend a specific sentence by failing to do so with adequate "enthusiasm." *Id.* at 456, 105 S.Ct. at 2105. *Benchimol* distinguished *Grandinetti* and *Brown* as instances in which the government attorney appearing before the sentencing court explicitly expressed personal reservations about the bargain itself. *Id.* The Court found that such personal reservations were "quite a different proposition than an appellate determination ... that the Government attorney had 'left an impression with the court of less-than-enthusiastic

support for leniency.'" *Id.* In the instant case, the record reflects that the government attorneys never expressed *any* reservations, either in written submissions or in oral representations, about having promised to recommend a twenty-five percent downward departure. To the contrary, the government consistently reaffirmed its intention to make the recommendation. The fact that the government questioned the reliability of Mr. Jimenez's assertions at sentencing that he had been threatened and possibly coerced did not undermine the recommendation that the government made to the court. Mr. Jimenez made these assertions for the first time at sentencing, and the government had every right to question their validity.

We cannot say, at least on the record before us, that the government failed to comply with the literal strictures of its agreement. It made its request for departure at the sentencing hearing and, on the morning of the sentencing hearing, filed a formal written motion for a § 5K1.1 departure. The government had already filed a sentencing memorandum that detailed Mr. Jimenez's cooperation as an informant and stated that the government would be recommending a twenty-five percent downward departure based on that cooperation. Additionally, the government prosecutor orally did note Mr. Jimenez's cooperation at the sentencing hearing and did recommend a sentence of 113 months' imprisonment, which represented a twenty-five percent departure from the Guidelines.

■ The prosecutor's last-minute filing of the written § 5K1.1 motion was "probably imprudent under the circumstances." *United States v. Hand*, 913 F.2d 854, 857 (10th Cir.1990). However, we cannot say, on this record, that it was "tantamount to an argument that the recommendation should be disregarded or that the reduction would be improper." *Id.* Moreover, because the court explicitly stated on the record that it was denying both the oral and the written motions for downward departure,[3] we cannot

---

**3.** Mr. Jimenez argues that the district court's written sentencing order, which denied the government's departure motion "without prejudice" and noted that the government could refile the

motion pursuant to Federal Rule of Criminal Procedure 35, demonstrates that the district court did not consider the government's motion on the merits. In light of the sentencing court's

say that defense counsel should have construed this denial as based on the government's failure to comply with the district court's requirement that the motion be filed in advance and in writing. Mr. Jimenez's attorney could have concluded reasonably that an objection to the government's conduct with regard to the plea agreement was not appropriate. The record reflects that the government complied, albeit late, with the agreement by making the appropriate request. The sentencing court was already fully aware of the agreement and had been apprised of Mr. Jimenez's cooperation by the government both at the plea hearing and in the government's written sentencing memorandum. The court, in sentencing Mr. Jimenez, specifically addressed, and rejected, the issue of substantial cooperation. Under the circumstances, we cannot say that counsel, in not asserting a breach of the plea agreement, rendered representation at a level of performance so substandard that he was "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

While the appellant is entitled to no relief on the claim he brings before us, we emphasize that our decision ought not be read as condoning the failure of the government to comply with the specific direction of the district court. We also respectfully suggest to our colleague in the district court that a more specific recital of the basis for denying a motion, such as the one at issue here, would expedite significantly our review.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

explicit denial of the motion on the record, we cannot say that defense counsel was required to

interpret the district court's actions in this manner.